

AO 91 (Rev. 11/11)  Criminal Complaint (approved by AUSA)     D. Ignall (16-018)

# UNITED STATES DISTRICT COURT
for the
Eastern District of Pennsylvania

| | |
|---|---|
| United States of America<br>v.<br>JERRY LOUIS<br><br>_____<br>*Defendant(s)* | )<br>)<br>)  Case No.  16- 497-m<br>)<br>)<br>)<br>) |

FILED
APR 22 2016
MICHAEL E. KUNZ, Clerk
By _____ Dep. Clerk

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of __February 24, 2015__ in the county of __Philadelphia__ in the __Eastern__ District of __Pennsylvania__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. 1029(a)(1) | access device fraud |

This criminal complaint is based on these facts:
SEE ATTACHED AFFIDAVIT

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Special Agent Daniel F. Jones, US Secret Service
*Printed name and title*

Sworn to before me and signed in my presence.

Date: __4.22.16__

_____
*Judge's signature*

City and state: __Philadelphia, PA__      Honorable Timothy R. Rice, US Magistrate Judge
*Printed name and title*

FILED
APR 22 2016
MICHAEL E. KUNZ, Clerk
By _____ Dep. Clerk

16-497-M

## AFFIDAVIT

DANIEL F. JONES, being duly sworn and under oath, deposes and says:

1. I am a Special Agent of the United States Secret Service and have been so employed since May 21, 2011. I am assigned to the Philadelphia Field Office, Philadelphia, Pennsylvania. Among my duties is the investigation of credit card fraud. I graduated from the Criminal Investigator Training Course at the Federal Law Enforcement Center in Glynco, Georgia, and the Special Agent Training Course in Beltsville, Maryland. I have had formal training in financial fraud investigations, more specifically credit card fraud and various forms of bank fraud. Prior to joining the Secret Service, I served with the Bradley County Sheriff's for approximately eight years in which time I gained experience investigating financial crimes, crimes against people and crimes relating to the illicit use of narcotics. Also, I have obtained a bachelor's degree in political science from Lee University, Cleveland, TN and Master's degree in Public Administration from the University of Tennessee at Chattanooga. The information set forth in this affidavit is from my own investigation and information provided by other law enforcement personnel, including agents with the Federal Bureau of Investigation and the Internal Revenue Service, and is true to the best of my knowledge, information, and belief.

2. This affidavit is in support of a criminal complaint and arrest warrant for JERRY LOUIS of 1413 Hellerman St. Apt. #1, Philadelphia, PA 19149, for a

violation of 18 U.S.C. § 1029(a)(1). Therefore, I have not included every fact known to me or other law enforcement officers working on this case.

3.  On June 25, 2012, Robert Bergman, Investigator of TD Bank, contacted me in reference to the checking account of a TD Bank customer. He advised that TD Bank's Online Banking Department received information that the customer never enrolled in TD Bank Online, but there were nine bill payments, which were paid between April 12, 2012 and April 28, 2012. These payments were not authorized by the customer and incurred a loss of $112,447. After speaking further with Investigator Bergman and other law enforcement personnel, I identified the individuals who cashed the checks from victim's TD Bank account. Four of the nine witnesses confirmed that a male they knew as "Jay Black" gave them the checks to cash.

Continuing in this investigation, other agents and I interviewed a witness regarding "Jay Black". I showed a picture of the individual believed to be "Jay Black" to the witness, who confirmed that the male in the photo is "Jay Black" and that his birth name is Jerry Louis. The witness told investigators that "Jay Black" gave him/her a check from a TD Bank customer and that he/she cashed the check and gave the money to "Jay Black". Furthermore, the witness told investigators that "Jay Black" sells stolen credit cards too.

4. On February 24, 2015, other agents working on this investigation conducted used a confidential human source ("CHS") to purchase fraudulently obtained credit cards from Jerry Louis. Between approximately 1:30 p.m. and 5:00 p.m. agents undertook physical surveillance in the vicinity of Rising Sun Avenue and Robbins Avenue in Philadelphia, PA

5. Prior to making the controlled purchase of credit cards, investigators provided the CHS with $1000.00 in US currency to give to subject "Jay Black" for the said purchase. Agents also provided the CHS with equipment to record audio and video of the meeting with "Jay Black." At approximately 2:19 p.m. agents observed the CHS enter a van the CHS told investigators was driven by "Jay Black." After a few minutes, the CHS got out of the van. Agents saw the van leave the area. Shortly thereafter, the CHS returned to the agents' location and advised that he gave "Jay Black" $1000.00 for ten fraudulent credit cards. The CHS told agents that "Jay Black" would return with the cards when they are ready. At approximately 3:30 p.m., "Jay Black" notified the CHS that the cards were ready. At approximately, 4:14 p.m., agents saw the CHS enter the same van that the CHS entered at 2:19 p.m. and saw the van drive to a Staples at 4640 Roosevelt Boulevard, Philadelphia PA. A few minutes later, agents saw the two men from the van enter the Staples and then leave after a few minutes. For the next half an hour, agents saw the two men walk along Rising Sun Avenue before departing separate ways. Shortly after 5 p.m., the CHS returned to the

investigating agents, who turned the recorder off. One of the agents searched the CHS and recovered eleven (11) VISA gift cards from the CHS.

I reviewed the recording made by the CHS. I was able to identify "Jay Black" from the video as Jerry Louis, a person I later interviewed. On the recording, the CHS and "Jay Black" communicated primarily in Creole. On June 16, 2015, the recording was transcribed from Creole into English and a copy was sent to the FBI Agent, who delivered the copy to me. The transcript shows that the CHS and "Jay Black" discussed exchanging money for "cards" and "VISA and American Express." Both of them discussed the number of cards agreed upon and how to see if the cards are "good" or not. They also discussed "typing" onto the cards. "Jay Black" stated, "It's not…As far as the typing, you are going to type something on a Visa? Those are the things that can make you get caught, brother." "Jay Black" also told the CHS, "You don't have to be scared. We are not stealing here." Near the end of the transcript "Jay Black" told the CHS, "Wait, let me show you. The guy sent ten cards. One, two, three, four, five, six…I have two in my pocket. I have eight that are good." "Jay Black" also told the CHS, "I'm not going to add things on stuff and find out later that they are no good. You understand? I have to check them out first in other things and then, I use them."

6. Following the surveillance, I received a copy of the eleven cards the CHS got from "Jay Black." On June 16, 2015, I recorded the embossed numbers from two of the credit cards recovered from "Jay Black": VISA card numbers ending in

8412 and 8093. No personal names were embossed on the cards. After recording the numbers embossed on front of the cards, I used an electronic card reader to determine the numbers encoded on the magnetic strip found on the rear side of the card. This device is utilized by taking the credit card in question and swiping it through the device. The device electronically scans the magnetic strip that is located on the rear of the credit card and uploads the number into a Windows excel spread sheet.

After completing this process, I learned that the numbers on the magnetic strip do not match the numbers embossed on the front side of the card. From my training and experience, this indicates that someone obtained credit cards numbers by fraudulent means and used an electronic device to upload them onto another card to be used for fraudulent purposes.

Continuing in my investigation, I identified the first six numbers recovered from the magnetic strip from the two above cards. They are: 54283 and 48473. These first six numbers are commonly referred to by the card issuers as "bank identification numbers or 'BIN". These BIN's can be entered into internet based web sites such as the one I used named "Free Bin Lookup" whose address is binlookup.com and a search of the numbers will reveal the card issuer. While accessing the binlookup.com internet page, I entered the BIN numbers located from two of the said cards that "Jay Black" sold to the CHS. The BIN search showed that the BIN numbers recovered from the magnetic strip belonged to Wells Fargo.

7. I contacted a Wells Fargo Bank Investigator in reference to the credit cards purchased from suspect "Jay Black". I explained to the investigator that two of the credit card numbers recovered from the magnetic strips, which were purchased from suspect "Jay Black", have bank identification numbers belonging to Wells Fargo. I provided the numbers to the investigator, and he confirmed that the credit card numbers do belong to active Wells Fargo credit card accounts for customers whose names are different than the suspects. The investigator believed we were able to capture the card numbers before any further fraud could be committed.

On April 22, 2015, State Parole agents responsible for monitoring Jerry Louis, also known as "Jay Black," while he is on parole, responded to Jerry Louis's address for a random search. The following items were located and seized from Jerry Louis's residence: Twenty one white plastic stock cards which, I have learned from my training and experience are white plastic cards resembling the shape and size of a credit card and contain magnetic strips on the rear and may be used to make credit cards. Also, agents found a social security card, and a piece of notebook paper with several names, dates of birth and social security numbers listed on it. One of the names listed on the sheet of paper was F.N. Listed alongside F.N.'s name was a social security number, an address, a date of birth, and a telephone number. I called the number listed by F.N.'s name and left a message on an answering machine. Later that day, I received a telephone call from a male who stated his name is F.N. and he received my message from his telephone answering machine that I left earlier. I informed F.N. that I found his

name on a piece of paper along with a social security number and date of birth and address. F.N. confirmed that these identifiers belonged to him. Furthermore, a US Secret Service Criminal Research Specialist conducted a database search and corroborated that the personal identifiers and address do belong F.N. just as he confirmed to me. F.N. told me that he does not know Jerry Louis and he never gave anyone permission to have his personal information at Mr. Louis's residence.

On April 28, 2015, I contacted Jerry Louis, also known as, "Jay Black" and scheduled a consensual interview at the US Secret Service Field Office at 600 Arch St. Philadelphia, PA. After Jerry Louis arrived, I immediately recognized him as the male in the photos that the said witnesses described as "Jay Black." During our interview, in which Jerry Louis waived his Miranda rights and agreed to speak, he denied any involvement in the sale of stolen credit cards or stolen gift cards. Also, Jerry Louis denied knowing anything about having F.N.'s personal information.

8. Based on the above facts, there is probable cause to believe that JERRY LOUIS knowingly conspired with at least one other person to commit an offense against the United States, that is access device fraud in violation of 18 U.S.C. §371, all in violation of 18 U.S.C. §1029(a)(2).

_____
DANIEL F. JONES
Special Agent
United States Secret Service

Sworn to and Subscribed to before Me
on this **2 2** day of April, 2016

_____
Honorable Timothy R. Rice
United States Magistrate Judge